IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Noreen G. BENGSTON, Attorney at Law.

Supreme Court

*No. 83–332–D. Submitted on briefs January 5, 1984.—*
*Decided January 31, 1984.*
(Also reported in 342 N.W.2d 744.)

For the appellant the cause was submitted on the pro
se brief of *Noreen G. Bengston,* Madison.

For the Board of Attorneys Professional Responsibil-
ity the cause was submitted on the brief of *Frank M.
Tuerkheimer,* Madison.

*PER CURIAM.    Attorney disciplinary proceeding; at-
torney's license suspended.*

Noreen G. Bengston, an attorney admitted to practice
in 1948 and who practices in Madison, appeals from Ref-
eree Franklin W. Clarke's findings, conclusions and rec-
ommendation for discipline concerning her unprofessional
conduct.   The referee found that Bengston neglected a
legal matter, in violation of SCR 20.32(3), by failing to
commence a legal action as she was retained to do by her

client, who was injured in an automobile accident, and by failing to negotiate a settlement with the insurer; that her responses to the client's inquiries over a period of ten years or more concerning the progress of the claim involved deceit and misrepresentation, in violation of SCR 20.04(4); that she entered into a business transaction with the client in which her interests and those of the client were adverse, in violation of SCR 20.27(1); and that she failed to respond to two letters of inquiry from the Board of Attorneys Professional Responsibility concerning the client's grievance, in violation of SCR 22.07(2). The referee recommends that Bengston's license to practice law be suspended for six months and that she be required to pay the costs of the disciplinary proceeding.

On this appeal, Bengston contends that the referee's conclusions that she misrepresented facts to her client and entered into an unethical business transaction with the client are contrary to the evidence in the record. In an attorney disciplinary proceeding the Board of Attorneys Professional Responsibility has the burden of showing that the attorney was guilty of professional misconduct by clear and satisfactory evidence, *State v. Wildermuth*, 76 Wis. 2d 476, 481 (1977), and we accept the referee's findings of fact unless they are clearly erroneous, *Disciplinary Proceedings Against Swartwout*, Case No. 83–545–D, decided January 27, 1984, *supra*, p. 380.

This disciplinary proceeding arose from Bengston's representation of a woman named Droster, who retained Bengston in 1969 to represent her to recover damages for injuries she sustained in an automobile accident. Both the client's car and the car that collided with it were insured by State Farm. Although Bengston had a complaint prepared and signed by the client, no complaint was ever filed in circuit court, nor did Bengston engage in any settlement negotiations with State Farm concerning her client's injuries. The statute of limitations on the

client's claim expired in March of 1971. Bengston admitted that she neglected her client's legal matter but claims that she believed that the complaint had been filed with the court by her secretary before the statute had run. Bengston maintains that the client's file had been lost in her office and was found among her closed files only after the board had initiated its investigation of the matter.

As to the claim that Bengston had misrepresented facts to her client concerning the matter, Droster testified at the disciplinary hearing that she repeatedly asked Bengston to inform her of the status of her claim and that Bengston at times blamed the delay on the fact that the judges were on vacation and that, because it was an election year, the judges were busy doing other things. She also testified that Bengston led her to believe that settlement from the insurer was imminent.

Droster testified that Bengston told her in December of 1981 that State Farm was willing to settle for $10,000 and asked Droster for her reaction. Droster said that she told Bengston it would be preferable to take that settlement rather than pursue litigation, in response to which Bengston said she would send Droster a check for $6,700, apparently deducting approximately one-third of the $10,000 amount. In fact, Bengston had not negotiated any settlement with State Farm, and her last contact with the insurer was in February, 1971. On the $6,700 check she sent Droster, Bengston typed the notation "settlement."

That check also serves as the basis for the charge that Bengston entered into a business transaction with Droster in which their interests were adverse. Because of her failure to commence legal action within the statutory time period or to negotiate a settlement of her client's claim with State Farm, Bengston was arguably liable to her client for malpractice. The referee found that the check was given in settlement of Droster's malpractice

claim against Bengston, although Bengston gave the client to believe that it was in settlement of the personal injury claim. Bengston claims that the check was a "gift" from her to Droster, whose daughter had at one time worked for Bengston as secretary in her law office and with whom Bengston had remained on friendly terms.

On the charge that she failed to cooperate with the board's investigation of Droster's grievance, Bengston admitted that she did not respond to the two letters, but she maintains that she was unable to provide the board with any information concerning the matter because she had not yet located the missing file. The file turned up shortly before the scheduling conference held in the disciplinary proceeding.

As evidence of her belief that the Droster complaint had, in fact, been filed in circuit court, Bengston points to the fact that the doctor who examined Droster did not send his final report to her until five years after the injury. Bengston argues that she would not have continued to try to ascertain the extent of Droster's injuries had she known that the complaint had not been filed. She maintains that Droster knew there was no settlement with State Farm and that Bengston was paying her out of her own money.

Bengston claims she admitted to Droster, immediately prior to sending her the check, that it was her fault the statute of limitations had run and that the file was lost. She insists that she made it clear to Droster that the check was not a settlement from the insurer. She states that Droster had obtained the services of another attorney in June of 1982 and argues that the new attorney could have advised Droster as to the legal effect of the "settlement" check.

By way of mitigation, Bengston argues that her negligence was caused by a clerical error, one which should not be as severely sanctioned as if she had personally omitted

to file the complaint in circuit court. She characterizes the recommended discipline as "harsh and punitive."

The board points out several inconsistencies in Bengston's testimony and statements made to board counsel during the investigative phase of the proceeding. Bengston initially stated to board counsel that she did not tell Droster that the statute of limitations had run, and she admitted that Droster could reasonably have assumed that the check was intended as settlement of her personal injury claim. At the hearing Bengston testified that she told Droster the statute had run and that she was making the payment from her own funds. The board notes that Droster, following receipt of the $6,700 check, wrote to Bengston saying, in part, "I wanted to remind you that you forgot to enclose a copy of agreement, and also an itemized statement of your services that were deducted from the check." Bengston did not send her any itemized statement or agreement.

Secondly, Bengston stated at the scheduling hearing that she did not know why the word "settlement" appeared on the check. She subsequently testified that she herself typed the word on the check.

Third, Bengston testified that she did not learn that there was no action filed in circuit court until after the disciplinary proceeding had been initiated, that is, on or about April 7, 1983. She retracted that testimony almost immediately, and she stated that she learned the fact in May of 1982, a short time before she sent the "settlement" check. At the hearing, board counsel asked Bengston whether she had ever been served with an answer to the supposedly filed complaint, whether a judge had been assigned to that case, whether a scheduling conference had been set, and whether she ever filed for a default judgment against State Farm. The answer in each case was negative.

The board argues that the credible evidence establishes that Bengston failed to file the complaint within the statute of limitations, misrepresented that fact to her client over a period of more than ten years, and, when the client became insistent that the matter be concluded, issued a $6,700 check represented to be a settlement of the personal injury claim, when it was, in fact, an attempt to conceal Bengston's own negligence and to avoid a malpractice suit. The board characterizes the check as the final "misrepresentation," by which Bengston tried to keep her negligence from her client, thereby permitting the statute of limitations on the client's malpractice claim against Bengston to run. Thus, the board concludes, Bengston's payment to the client constituted a business transaction in which Bengston's interests were adverse to her client's.

On the issue of appropriate discipline, the board views the six-month suspension as being "on the compassionate side." The board had suggested that the referee impose a suspension of 12 to 18 months. The board suggests that Bengston's conflicting testimony during the disciplinary proceeding indicates that "she does not take seriously the need to be truthful." While this might suggest that the board feels that the recommended discipline is not sufficient, it is the board's position that the recommended six-month suspension be imposed.

We adopt the findings of fact made by the referee, as they are not clearly erroneous. The facts establishing Bengston's violations of the Code of Professional Responsibility, SCR ch. 20, were established by clear and satisfactory evidence, which was not limited to Droster's testimony. Where that testimony conflicted with Bengston's, the referee found that Droster's testimony was credible.

The referee's conclusions that Bengston violated SCR 20.32 (3), 20.04 (4), 20.27 (1) and 22.07 (2) were correctly

drawn from the facts, and we adopt those conclusions. On the basis of Bengston's misconduct, compounded by her attempts to explain away inconsistencies in her testimony regarding the relevant facts, for example, whether she led Droster to believe that the check was in settlement of her personal injury claim, whether Bengston really intended it as a settlement for a potential malpractice claim, whether she had ever advised Droster that the statute of limitations had run on the personal injury claim, we agree with the referee's recommended six-month suspension of Bengston's license as appropriate discipline.

IT IS ORDERED that the license of Noreen G. Bengston to practice law in Wisconsin is suspended for a period of six months, commencing March 1, 1984.

IT IS FURTHER ORDERED that Noreen G. Bengston pay to the Board of Attorneys Professional Responsibility within 60 days of the date of this order the costs of this disciplinary proceeding, in the amount of $2,213.15, provided that if the costs are not paid within the time specified, the license of Noreen G. Bengston to practice law in Wisconsin shall be revoked forthwith.