IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST William WENTZEL, Attorney at Law.

Supreme Court

*No. 95–0304–D. Submitted on briefs September 10, 1996.—Decided October 31, 1996.*

(Also reported in 554 N.W.2d 669.)

For William A. Wentzel there were briefs by William A. Wentzel, Nashotah.

For the Board of Attorneys Professional Responsibility there was a brief by Celia M. Jackson, counsel, Milwaukee.

PER CURIAM. William A. Wentzel appealed from the report of the referee in respect to several findings and conclusions concerning his professional misconduct. Attorney Wentzel did not appeal from the referee's recommendation that his license to practice law be suspended for two years as discipline for the professional misconduct established in this proceeding but contended that the suspension should be made retroactive to the end of the six-month period of a prior disciplinary license suspension, which remains pending. The Board of Attorneys Professional Responsibility (Board) had asked the referee to recommend a three-year license suspension for the misconduct established in this proceeding but did not appeal from the referee's disciplinary recommendation.

We determine that the seriousness of the misconduct established here calls for discipline more severe than the two-year license suspension recommended by the referee. That misconduct includes Attorney Wentzel's failure to file income tax returns or estimated tax vouchers for ten years, for which he was convicted of two misdemeanor counts, his agreeing to represent clients and accepting retainers without informing the clients that his license to practice law would soon be suspended and subsequently refusing to return the retainers, failing to act promptly and diligently in a client's matter and misrepresenting to clients his work on their matters, continuing to render legal services to a client after his license was suspended, and refusing to refund a client's advance payment of fees he had not

earned. In light of the number and nature of the incidents of misconduct and in view of Attorney Wentzel's having been disciplined for professional misconduct twice previously, we suspend Attorney Wentzel's license to practice law for three years and, as the referee has recommended, require him to make restitution to those clients whose retainers he refused to return and whose advance fee he neither earned nor returned.

Attorney Wentzel was admitted to practice law in Wisconsin in 1973 and practiced in Milwaukee. In 1987, the court suspended his license for 90 days as discipline for the following: failing to return a security deposit to a couple who wanted to lease his home, using client trust account funds for personal use and permitting the account to become overdrawn, failing to provide information to a judge in support of his claim of illness to obtain an adjournment of a trial date, and misrepresenting to a client that her personal injury claim had been settled, failing to give notice of her automobile accident promptly after being retained and failing to communicate with her concerning the progress of the matter. *In re Disciplinary Proceedings Against Wentzel*, 142 Wis. 2d 1, 416 N.W.2d 287 (1987). In 1993, the court imposed a six-month license suspension, commencing June 21, 1993, for the following: failing to act with reasonable diligence and promptness in pursing two clients' legal matters, misrepresenting to a client that he had commenced an action on the client's behalf, failing to deposit a client's advance of costs into his trust account, failing to comply with clients' reasonable requests for information concerning the status of their legal matters, failing to turn over two clients' files upon demand and refund unearned fees, and failing to cooperate with the Board in its investigation of client grievances. *In re Disciplinary*

*Proceedings Against Wentzel*, 176 Wis. 2d 40, 499 N.W.2d 166 (1993).

Toward the end of the 1993 suspension, Attorney Wentzel petitioned for reinstatement of his license, and the matter was referred to the district professional responsibility committee for investigation and hearing. While that petition was pending, the Board received grievances against Attorney Wentzel for conduct that previously had not been considered, and witnesses involved in two of those matters testified at the reinstatement hearing. The district committee recommended to the Board that the reinstatement petition be denied, primarily because of Attorney Wentzel's demonstrated lack of organization in the conduct of his office, his failure to express any remorse for harm caused his clients by his misconduct, his failure to return all client files following his suspension, and his continuing to practice law during the period of suspension.

The Board recommended to the court that Attorney Wentzel's reinstatement petition be denied on the grounds that he had not complied with the court's suspension order in that he conducted legal research for a client while his license was suspended, he admitted at the reinstatement hearing that he continued to drive after his license was revoked following a DUI conviction some two months prior to the suspension, he had not turned over two or three files requested by former clients, he failed to respond promptly to Board requests for information in the reinstatement proceeding, necessitating five letters from the Board before a complete response was produced, he did not promptly refund unearned fees to two clients, he misrepresented to the district committee that he had not practiced law during the period of suspension, and he failed to notify at least

two clients of his license suspension either shortly before it was to commence or once it had. Acting on the Board's adverse recommendation, the court denied Attorney Wentzel's reinstatement petition October 12, 1994. *Reinstatement of Wentzel*, 187 Wis. 2d 297, 522 N.W.2d 216 (1994).

In the instant proceeding, Attorney Wentzel stipulated to the misconduct allegations of six of the eight counts set forth in the Board's complaint, and a disciplinary hearing was held on the remaining two counts. Based on the parties' stipulation and the evidence presented at the hearing, the referee, Attorney Charles Herro, made the following findings of fact and conclusions of law concerning Attorney Wentzel's professional misconduct in the following matters.

(1) In March, 1994, the Wisconsin Department of Revenue informed the Board of Attorney Wentzel's failure to file income tax returns or estimated tax vouchers for ten years — 1982 to 1992. In October, 1995, Attorney Wentzel was convicted by a jury of two misdemeanor counts of wilfully failing to file state income tax returns and make estimated payments for 1990 and 1991, and he was sentenced to 90 days in jail for each count, concurrent. The sentence was stayed and he was placed on two years' probation.

The referee concluded that by wilfully failing to file state and federal income tax returns for calendar years 1982 through 1992, Attorney Wentzel engaged in misconduct, defined in SCR 20:8.4(f)[1] to include violation of a statute.

---

[1] SCR 20:8.4 provides, in pertinent part:

**Misconduct**
It is professional misconduct for a lawyer to:
. . .

(2) Toward the end of April, 1993, while the previous disciplinary proceeding was pending and two weeks before the court issued its order suspending his license, a client retained Attorney Wentzel to represent him in a divorce action and paid him a $500 retainer. Prior to the effective date of the suspension, Attorney Wentzel met with the client and prepared a summons and divorce petition but never filed the action. He did not tell the client of the suspension and that the client would have to obtain other counsel once the suspension began on June 21, 1993.

During June and July of 1993, the client made numerous attempts to contact Attorney Wentzel by telephone, by leaving messages and by going to his office, but Attorney Wentzel did not respond to any of those efforts. In August, 1993, the client retained another attorney to represent him in the divorce action, and that attorney asked Attorney Wentzel to return the client's $500 retainer. Attorney Wentzel did not respond or refund the retainer.

In February, 1994, the Board wrote Attorney Wentzel requesting a response to a number of misconduct allegations in the client's grievance, including his failure to return the client's retainer upon his license suspension, but Attorney Wentzel did not respond to that letter. He did respond to a second letter from the Board, stating that he intended to refund a portion of the retainer, as he had not filed the summons and petition in the client's divorce matter. During the district committee's investigation on his reinstatement petition, Attorney Wentzel did not timely and fully respond to the committee's inquiry and did not refund any portion of the divorce client's retainer.

(f) violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers;

The referee concluded that by failing to refund a fee paid to him in advance for representation in a divorce proceeding when the fee had not been earned, Attorney Wentzel violated SCR 20:1.16(d).[2] He violated SCR 22.26(1)(a)[3] by failing to notify his client of the license suspension and of his consequent inability to represent him following the effective date of that suspension. By failing to respond to the Board's initial inquiry regarding the client's grievance and promptly and fully respond to the district committee, Attorney Wentzel violated SCR 21.03(4)[4] and 22.07(2) and (3).[5]

---

[2] SCR 20:1.16 provides, in pertinent part:

**Declining or terminating representation**

. . .

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

[3] SCR 22.26 provides, in pertinent part:

**Activities on revocation or suspension of license.**

(1)(a) A disbarred or suspended attorney on or before the effective date of disbarment or suspension shall:

1. Notify, by certified mail, all clients being represented in pending matters of the disbarment or suspension and consequent inability to act as an attorney after the effective date of the disbarment or suspension.

2. Advise the clients to seek legal advice of the client's own choice elsewhere.

[4] SCR 21.03 provides, in pertinent part:

**General principles.**

. . .

(4) Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator.

291

(3) In May, 1993, several days after the court ordered the suspension of his license commencing June 21, 1993, a client retained Attorney Wentzel to represent him in a divorce proceeding and paid him a $500 retainer. Attorney Wentzel did not tell the client of his impending license suspension and did not file the divorce action. He also did not notify the client of the suspension after it began or tell him he needed to obtain other counsel.

During June and July of 1993, the client left numerous messages inquiring into the status of his case, but Attorney Wentzel did not respond. When the client learned from another source in July, 1993 that Attorney Wentzel's license was suspended, he went to Attorney Wentzel's home to ask him about the suspension and have his file and retainer returned. Attorney Wentzel did not return the file or any portion of the

---

[5] SCR 22.07 provides, in pertinent part:

**Investigation.**

. . .

(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

(3) The administrator or committee may compel the respondent to answer questions, furnish documents and present any information deemed relevant to the investigation. Failure of the respondent to answer questions, furnish documents or present relevant information is misconduct. The administrator or a committee may compel any other person to produce pertinent books, papers and documents under SCR 22.22.

retainer but advised the client that the suspension would not be a problem.

When the client reported his failure to return the file and retainer, the Board wrote to Attorney Wentzel in July, 1993 asking him to return them. Attorney Wentzel did not do so. In his response to a second letter from the Board, Attorney Wentzel stated that the retainer fee barely covered the preparation of the summons and petition and the filing fee, even though in fact he had not filed any pleading. He did, however, return the client's file and $350 of the $500 retainer.

The referee concluded that Attorney Wentzel's failure to commence the client's divorce action constituted a failure to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.[6] His failure to communicate with the client and keep him informed of the status of the matter and promptly respond to reasonable requests for information violated SCR 20:1.4(a).[7] His failure to return the client's file and retainer upon request violated SCR 20:1.16(d), and his failure to tell the client of the impending license suspension when he was retained constituted conduct involving dishonesty, deceit or misrepresentation, in violation of SCR 20:8.4(c).[8]

---

[6] SCR 20:1.3 provides:

**Diligence**
A lawyer shall act with reasonable diligence and promptness in representing a client.

[7] SCR 20:1.4 provides, in pertinent part:

**Communication**
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

[8] SCR 20:8.4 provides, in pertinent part:

**Misconduct**

Attorney Wentzel's misrepresentation to the Board that the retainer paid by the client barely covered the filing fee and preparation of documents, when in fact he did not file any documents, violated SCR 20:8.1(a)[9] and 22.07(2). Finally, his failure to notify the client of his license suspension once it commenced and of his consequent inability to act as an attorney violated SCR 22.26(1)(a).

(4) In July, 1990., a client retained Attorney Wentzel to pursue a collection matter. Although retained on a contingency basis, Attorney Wentzel never prepared a written contingent fee agreement required by SCR 20:1.5(c).[10] Attorney Wentzel told the

---

It is professional misconduct for a lawyer to:

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

[9] SCR 20:8.1 provides, in pertinent part:

**Bar admission and disciplinary matters**

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact;

[10] SCR 20:1.5 provides, in pertinent part:

**Fees**

. . .

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in .writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and if there is a recovery, showing the remittance to the client and the method of its determination.

client he would commence an action and that it would take up to six months to get a court date. When the client contacted him some six months later regarding the status of the matter, Attorney Wentzel misrepresented to him that the case was going well and that the courts were "booked up" for a year and a half. The client contacted Attorney Wentzel every six months thereafter and, when able to reach him, was assured that the case was going well. In fact, however, Attorney Wentzel never filed an action.

The referee concluded that Attorney Wentzel's failure to pursue litigation or take other significant action regarding the collection matter from July, 1990 to February, 1993, Attorney Wentzel failed to act with reasonable diligence and promptness in representing the client, in violation of SCR 20:1.3. His failure to have a written contingent fee agreement violated SCR 20:1.5(c). His misleading the client into believing that an action had been filed and that the court system was backlogged for a period of up to one and one-half years constituted conduct involving dishonesty, deceit and misrepresentation, in violation of SCR 20:8.4(c).

(5) In mid-February, 1992, a client retained Attorney Wentzel to represent him in several matters, including a theft claim the client had filed with his homeowner's insurer. The client paid Attorney Wentzel $650 and gave him the written materials relating to each of the matters. Prior to retaining Attorney Wentzel, the client had submitted a $38,000 claim to his insurer in the theft matter and was offered a settlement of $3800, which he rejected.

When the client first consulted Attorney Wentzel, the one-year period of limitation on the theft claim under the insurance contract had not yet expired. Attorney Wentzel did not pursue the matter timely, did

not commence litigation, and allowed the period of limitation to expire. Despite Attorney Wentzel's insistence that he never agreed to represent the client on the insurance claim, the referee found that the client reasonably believed Attorney Wentzel was acting as his counsel because he had asked him to try to obtain a more satisfactory resolution of the matter than he was able to achieve on his own, he gave him all of the documents relating to his claim, and Attorney Wentzel accepted those documents and said he would contact the insurer.

Attorney Wentzel told the client he had contacted the insurer and that his claim had been denied. However, the insurer had no record of Attorney Wentzel's ever having contacted the claims adjuster regarding the client's claim or the attorney representing the insurer in the matter. During the Board's investigation of this matter, Attorney Wentzel asserted that he had not been retained to represent the client on the insurance claim but had contacted the insurer as a personal favor.

Starting in February, 1993, the client began making regular calls to Attorney Wentzel regarding the status of his claim, and the calls continued until September, 1993. On August 19, 1993, the client contacted the insurer's attorney regarding his claim and was told that the time to file an action had expired August 11, 1992. In August and September, 1993, the client tape recorded several telephone conversations with Attorney Wentzel during which Attorney Wentzel read him the language of a statute indicating that there was a six-year statute of limitations on the client's claim and agreed to review and research a court decision the insurer's counsel had cited to the client. The client then

contacted the insurer's attorney and reported what Attorney Wentzel had told him.

In one of those conversations with his client, Attorney Wentzel asked for another copy of the client's insurance policy. The client obtained a copy from the insurer's attorney and gave it to Attorney Wentzel in September, 1993. Attorney Wentzel then discussed the policy with the client and told him that it contained a one year limitation on the client's claim, which already had expired. When these conversations took place, Attorney Wentzel's license to practice law was suspended.

The referee concluded that Attorney Wentzel failed to act with reasonable diligence and promptness in the client's matter, in violation of SCR 20:1.3, by not pursuing any contact with the insurance company after receiving and accepting documents from the client concerning his claim and by not commencing litigation prior to the expiration of the applicable period of limitation. His misrepresentation to the client that he had contacted the insurer when he had not done so violated SCR 20:8.4(c). His misrepresentation to the Board that he had not been retained to handle the client's insurance claim and that he had contacted the insurer violated SCR 20:8.1(a) and 22.07(2). By conducting legal research and giving advice to the client following the effective date of his license suspension, Attorney Wentzel violated SCR 22.26(2).[11]

---

[11] SCR 22.26 provides, in pertinent part:

**Activities on revocation or suspension of license.**

. . .

(2) A suspended or disbarred attorney may not engage in the practice of law or in any law work activity customarily done by law students, law clerks or other paralegal personnel, except that he or she may engage in law related work for a commercial employer not itself engaged in the practice of law.

In this appeal, Attorney Wentzel first contended that the referee improperly concluded that he failed to act with reasonable diligence in regard to his client's theft claim, arguing that his client had not given him any documentation on the claim until after the period of limitation specified in the insurance policy had expired and the claim was barred. That contention has no merit. The referee's finding that the client had given Attorney Wentzel the paperwork relating to the theft claim when he retained him in the matter nine months before the claim was barred is not clearly erroneous, and the referee properly rejected Attorney Wentzel's contention that he was never retained to represent the client on the theft claim.

Attorney Wentzel also argued that the referee improperly found that he had engaged in the practice of law while his license was suspended by doing research and advising his client in respect to the applicable statute of limitations on the theft claim. That argument is based on Attorney Wentzel's contention that the only evidence supporting that finding was the transcripts of alleged phone conversations between him and his client taped by the client without his knowledge or permission, evidence he contends was inadmissible. Contrary to that contention, the record contains sufficient evidence in addition to the transcripts to support the referee's finding, including the client's testimony at the hearing and Attorney Wentzel's own testimony at a deposition that he had advised his client concerning the applicable statute of limitations, reviewed the insurance policy and researched the case cited to the client by the insurer's attorney. The referee noted in his report that he had considered that deposition testimony in making his findings.

(6) In July of 1991, a client retained Attorney Wentzel and paid him a $250 retainer to handle a civil claim against a former employee. Between then and October 20, 1992, Attorney Wentzel did nothing of substance regarding the client's claim and did not return his client's numerous calls or correspondence.

On October 20, 1992, the client wrote Attorney Wentzel that he would file a complaint against him with the Board unless his file were returned within the week. Attorney Wentzel did not reply to that letter and did not return the client's file. When he did produce it during the Board's investigation of the client's grievance, the file contained no evidence that he had done any work in the matter. Attorney Wentzel did not file a claim or commence any legal action on behalf of the client.

The referee concluded that by failing to notify his client of the merits of his claim or take action on the claim for 15 months, Attorney Wentzel failed to act with reasonable diligence and promptness in representing the client, in violation of SCR 20:1.3. By failing to respond to the client's calls concerning his claim and by failing to advise the client of the results of his review of the file, Attorney Wentzel did not keep his client reasonably informed or respond to reasonable requests for information, in violation of SCR 20:1.4(a). His failure to return the client's file upon request violated SCR 20:1.16(d).

(7) In September, 1992, Attorney Wentzel filed a request for mediation of a client's medical malpractice claim against a hospital and two doctors. A month later the mediation panel administrator informed him that he needed to file a statement of the case, but he did not respond and did not file that statement. He again was advised in mid-November, 1992 that the information

299

was needed, but he did not respond or file a statement of the case. He also failed to respond to a third letter from the administrator in early December, 1992. The period for mediation expired on or about December 20, 1992, and when Attorney Wentzel filed a statement of the case on February 24, 1993, the mediation panel's jurisdiction had terminated and the request for mediation was dismissed. Attorney Wentzel never commenced any further action on behalf of the client regarding the claim.

Attorney Wentzel represented the same client on another personal injury matter from April, 1990 and assumed there was a contingency agreement because he obtained the case from another attorney who had represented the client on a contingency. Attorney Wentzel did not prepare a written contingent fee agreement, as required by rule.

The referee concluded that Attorney Wentzel failed to act with reasonable diligence and promptness in representing this client on his malpractice claim, in violation of SCR 20:1.3. His failure to provide the client a written contingent fee agreement violated SCR 20:1.5(c).

(8) On February 13, 1993, a couple retained Attorney Wentzel to represent the husband in a bankruptcy, agreeing to a fee of $700. Attorney Wentzel accepted an initial payment of $300 and gave the couple a blank bankruptcy petition on which they were to list their debts and return it to him. The couple told Attorney Wentzel the bankruptcy filing was urgent because of an ongoing garnishment of the husband's wages.

The clients also discussed with Attorney Wentzel a child support matter that was pending against the husband, and Attorney Wentzel agreed to telephone the

300

child support agency to obtain a reduction in the amount of support. Attorney Wentzel made that telephone call but did not make an appearance or communicate with the agency in writing. Later that month, the husband appeared at the court hearing without counsel and reached a stipulation on the amount of child support, but the stipulation was not based on the telephone call Attorney Wentzel had made to the agency.

On February 19, 1993, six days after they retained him, the couple met with Attorney Wentzel and paid him the remaining $400 of his fee and returned the completed bankruptcy forms to prepare and file. From that date until June, 1993, the couple made repeated telephone calls to Attorney Wentzel regarding the filing of the bankruptcy petition. The woman called him two or three times per week and left messages indicating the urgency of the matter because of the $100 per week garnishments.

In May, 1993, the husband went to Attorney Wentzel's home and signed undated bankruptcy papers. Attorney Wentzel subsequently dated them June 7, 1993, two weeks prior to the commencement of his six-month license suspension, and had the petition filed four days after the suspension commenced. Unbeknownst to the clients, the petition set forth that it was being filed by the bankrupt pro se. The couple did not learn of Attorney Wentzel's license suspension until almost two years later.

After the petition was filed, the couple was informed by the bankruptcy trustee that some of the schedules Attorney Wentzel had prepared needed to be amended and that a change of address form had to be filed. Because of Attorney Wentzel's suspension and the need to revise the schedules, the couple retained

another attorney and paid him $500 to handle the bankruptcy. That attorney had to revise completely the bankruptcy schedules in order to conclude the matter. Attorney Wentzel did not refund any of the unearned fees he had collected from the clients for his incompetent representation or reimburse them for the cost of successor counsel.

The referee concluded that by failing to prepare complete and accurate schedules, provide his clients' accurate address to the bankruptcy court and identify appropriate exemptions, Attorney Wentzel failed to provide competent representation to these clients, in violation of SCR 20:1.1.[12] By his failure to file a bankruptcy petition until June 25, 1993, after being told by his clients that the filing was urgent because of an ongoing garnishment, Attorney Wentzel failed to act with reasonable diligence and promptness in his representation of these clients, in violation of SCR 20:1.3. His failure to respond to numerous telephone calls from the clients for more than four months regarding the status of the bankruptcy violated SCR 20:1.4(a). His failure to refund to the clients the advance payment of fees that he had not earned violated SCR 20:1.16(d).

On appeal, Attorney Wentzel contended that the referee improperly concluded that he failed to act with reasonable diligence in representing his bankruptcy clients, asserting that the evidence established that the papers and documentation in the matter were not

---

[12] SCR 20:1.1 provides:

**Competence**

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

provided to him until shortly before he filed the bankruptcy schedules. That argument has no merit. The referee's finding was based on his assessment of the credibility of conflicting testimony, and the referee accepted the testimony of the clients that they had completed the forms Attorney Wentzel had given them and returned them to him a week later, at which time they paid him the balance of his retainer and advised him of the urgency of filing the petition.

As discipline for the totality of his misconduct, the referee recommended that Attorney Wentzel's license to practice law be suspended for two years, rejecting the Board's position that the misconduct warrants a three-year license suspension. In making that recommendation, the referee explicitly considered the extended period during which Attorney Wentzel's license has remained suspended beyond the six-month period that commenced in June, 1993, noting that five of the eight matters considered here had been raised in the unsuccessful reinstatement proceeding that resulted in the continuation of the suspension. In addition to the license suspension, the referee recommended that Attorney Wentzel be required to settle all claims for unearned fees in three of the matters, as well as the claims of any other persons harmed by his misconduct, and pay the costs of this proceeding.

While conceding that the two-year license suspension recommended by the referee is appropriate discipline for his professional misconduct, Attorney Wentzel urged on appeal that the suspension be made retroactive to the end of the six-month period for which his license was suspended in 1993. He argued that the continuation of that suspension beyond those six months resulted from the denial of his reinstatement

petition, which was based in large part on the matters considered in this proceeding.

In support of his position, Attorney Wentzel cited prior cases in which the court made license suspensions retroactive to the end of a prior suspension period or included them in suspensions already being served. In *Disciplinary Proceedings Against Bengston*, 124 Wis. 2d 770, 370 N.W.2d 269 (1985), the court imposed no additional discipline for the attorney's misconduct because it had occurred during the same period as earlier misconduct for which a suspension had been imposed and, had it been considered in the prior proceeding, the totality of the misconduct would not have warranted a suspension longer than that originally imposed. In a subsequent *Bengston* case, 127 Wis. 2d 456, 380 N.W.2d 673 (1986), the court, acting on the referee's recommendation, made a one-year license suspension retroactive to the date on which a prior six-month suspension would have ended, partly because the misconduct had occurred some 13 years earlier and because the new proceeding resulted in the attorney's license suspension continuing for more than 15 months beyond the original period.

In addition to determining that the seriousness of Attorney Wentzel's misconduct established in this proceeding warrants discipline more severe than the two-year license suspension recommended by the referee, we determine that the three-year license suspension we impose for it should not be made retroactive but should commence the date of the order imposing it. A substantial portion of the misconduct considered for the first time in this proceeding occurred after the 1993 license suspension and some of it was directly related to that suspension. In addition to conducting legal research and advising a client while his license was

suspended, Attorney Wentzel accepted retainers from other clients knowing his license would be suspended and did not tell his clients that fact and advise them that he would not be able to complete their legal matters. In the bankruptcy matter, he continued to act after the effective date of the suspension, attempting to conceal that fact by setting forth on the bankruptcy petition he filed that his clients were appearing pro se, which he did without his clients' knowledge or consent. Moreover, there is no reason to believe that if the misconduct that occurred prior to the 1993 suspension had been included in the earlier disciplinary proceeding, more severe discipline would not have been imposed.

We adopt the referee's findings of fact and conclusions of law and suspend Attorney Wentzel's license to practice law for three years, effective the date of this order, as discipline for professional misconduct. In addition, we order Attorney Wentzel to make restitution as specified by the referee to clients from whom he accepted retainers but failed to promptly and competently complete their legal work, including reimbursement of his bankruptcy clients for the attorney fee they incurred to have their matter completed by successor counsel.

IT IS ORDERED that the license of William A. Wentzel to practice law in Wisconsin is suspended for a period of three years, effective the date of this order.

IT IS FURTHER ORDERED that within 60 days of the date of this order William A. Wentzel make restitution as specified in the report of the referee and as set forth herein.

IT IS FURTHER ORDERED that within 60 days of the date of this order William A. Wentzel pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid

within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of William A. Wentzel to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that William A. Wentzel comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.